**Desplaines Safety Deposit Company, Appellant, v. William E. Lucas, Trustee, et al., Appellees.**

### Gen. No. 17,906.

1. LANDLORD AND TENANT—*construction of lease.* Where there is a provision in a lease that in case the building shall be rendered untenantable by fire the lessor may at his option terminate the lease or repair said building within sixty days, the period of sixty days is construed to begin at once from the time of the fire.

2. LANDLORD AND TENANT—*where lessee does not delay repairing.* Where the lessee removes the stock and salvage within a reasonable time after a fire and places no unreasonable obstacles in the way, the lessor is not excused from the terms of the lease requiring repairs to be made within sixty days.

3. LANDLORD AND TENANT—*where lessor does not repair within the required time.* In an action for rent, where lessee sets up the defense that the lease was terminated by failure of lessor to reconstruct within the required time after a fire, the lessor cannot contend that lessee rented other premises and did not intend to return, since such fact has no tendency to prevent doing the work within the required time.

Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed March 4, 1913.

CHARLES T. FARSON and STERN, ANDERSON & DAVIS, for appellant.

FREDERICK W. WINKLER, for appellees.

MR. JUSTICE BARNES delivered the opinion of the court.

This bill was filed to recover rent and subject certain property alleged to be held by defendants as trustees to a lien therefor. If upon the facts disclosed the court below properly held that the term of the lease set up in the bill had been terminated, and that appellees were thereby relieved from the obligation to pay further rent, then no other grounds for dismissing the bill need be considered.

The lease contained this clause:

"and in case the said demised premises, or the building in which said demised premises are situated, shall be rendered untenantable by fire, or other casualty, or by reason of necessary repairs, the lessor may, at his option, terminate this lease, or repair said premises or buildings within sixty (60) days, and failing so to do, or upon the total destruction of said building by fire, or other casualty, the term hereby created shall cease and terminate."

The building was rendered untenantable by fire on August 23, 1906, and the work of repair or reconstruction was not completed until about November 15th, at least eighty-four days thereafter. The rent was paid to September 1st. Appellees were obliged to vacate the

premises, and while out of possession were not required to pay rent. Notice of the completion of the work of repair or reconstruction was given them on November 17th, but they never resumed possession of the premises.

These questions arise: (1) When did the sixty-day period begin to run; and (2) if it began at the time of the fire, was the failure to repair within the required time occasioned by appellees?

As to the first question, we think the language of the lease admits of but one construction, namely, that the period for repair began upon the happening of the event requiring appellant to exercise its option. The provision referred to is very explicit. It contains no conditions and nothing on which to predicate any implied obligation on the part of appellees other than not to hinder the lessor in the exercise of its option. That the clause was so construed by appellant is indicated by the fact that on the very day of the fire its president wrote appellees a letter saying, "I find that we are entitled to sixty days, and there is no question in my mind but what we will have the building ready in that time." Manifestly he understood that the period for repair began to run at once, and the election to repair must have been made not only with that understanding, but with full knowledge and in contemplation of what, under the circumstances then existing, would be required to be done in preparation and completion of the work of reconstruction.

Was appellant hindered by appellees from completing the work within the required time? A consideration of this question calls for a brief review of the principal facts.

The damage by the fire rendered the occupation of the building for business impracticable until it should be repaired. The fire went up from the second floor, destroying the middle portions of the third, fourth and fifth floors and of the roof. The front and rear portions of these upper floors were still standing and

carrying such stock as did not fall through. It was recognized that no property could be removed until the adjustment of the insurance, which as to the stock was completed August 30th, and as to the building September 4th. From the date of the adjustment of the insurance to September 10th, appellees were engaged in removing and removed everything which could be handled from the basement and second floor without danger to the men doing the work. On September 10th they began the removal of salvage and the last of the stock was removed on October 5th. It does not appear that an unreasonable length of time was taken for such work as appellees were thus expected or required to do.

As to appellant's undertaking, it appears that shortly after the fire its architect was directed to prepare plans and specifications for reconstruction and solicit bids for the work, that the time taken and required therefor was about three weeks, and that the contract for reconstruction was not let till September 19th. It appears that appellant employed the same firm to do the wrecking that was employed by appellees to remove the salvage; that the wrecking was begun September 20th and finished September 30th, and in the same time salvage was being removed but by a different gang of men. But there is nothing in the record to indicate that the work of one gang interfered with that of the other.

Appellant got some of the timbers on the ground September 27th. It was not possible to proceed with the work of hoisting and framing them until the stock was removed. and it is not claimed that after October 5th or 6th there was anything done by appellees to prevent the work of reconstruction.

Appellant wrote to appellee September 10th and 12th and October 1st, complaining that Benson & Son, the firm that removed the salvage and did the wrecking, were delaying the beginning of the work of reconstruction. That could hardly have been the fact before

October 1st, as appellant had not closed its contract for reconstruction until September 19th, did not get timbers for the building on the ground until September 27th, and did not finish the work of wrecking before the 30th. The delay in these matters was not caused by appellees. These letters, therefore, are more suggestive of urging speed on the part of appellees than readiness on the part of appellant to proceed with the work of reconstruction.

It is appellant's contention that it was prevented by appellees from beginning the work of reconstruction until October 6th; that it was completed within a reasonable time thereafter, namely, from forty to forty-two days, and that under such circumstances the law would allow it a reasonable time for the completion of the work if in law the time limit under the circumstances was not absolutely abrogated.

As we view the facts and construe the lease, when appellant elected to repair the building, it knew its condition, and that a reasonable time would have to be taken for the adjustment of insurance, for the removal of salvage, for the work of wrecking, for the preparation of plans and specifications, for the submission of bids, and for the closing of contracts, before it could begin the actual work of reconstruction, and at the time of such election apparently realized that these matters would consume a part of the sixty-day period. It does not appear that the time taken for any of these matters was unreasonable. Even the three weeks taken by the architect he deemed reasonably short, and it does not appear that the contractor's failure to be ready before September 27th was due to appellees. Surely it could not be charged to appellees that appellant did not close its contract before September 19th, get its timbers ready before the 27th, or complete its wrecking before the 30th. The only delay, therefore, that could be charged to appellees, if any, was such as took place after appellant was ready to proceed with work at the building, namely, between September 27th

or 30th and October 6th, a period of seven to nine days. As the evidence shows that appellant took from forty to forty-two days thereafter on the work of actual reconstruction, and over twenty-one days prior thereto in preparation therefor, a period of more than sixty days, during which no unreasonable obstacles were presented by appellees, so far as disclosed by the record, the chancellor's finding was not contrary to the evidence.

Appellant urges that appellees did not intend to return to the building, and acted in bad faith in renting, shortly after the fire other premises into which they removed their goods. Whatever their motives may have been, such fact had no tendency to prevent appellant from doing the work of repair within the time stipulated for it.

The decree will be affirmed.

*Affirmed.*